IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

KENTESHIA KIMBLE, individually
and as personal representative of the Estate
of HAZEL MCGARY,                          )
                                          )
        Plaintiffs,                       )
                                          )        Civil Action No.:
v.                                        )        cv-21-
                                          )
UNITED STATES OF AMERICA,                 )
ROBIN HUNTER-BUSKEY, E. KNOPP, )           JURY TRIAL REQUESTED
C. POTTER, JIM WILLIAMSON,                 )
ANGEL ORTIZ, &                            )
UNKNOWN EMPLOYEES OF THE                   )
U.S. BUREAU OF PRISONS,                    )
                                          )
        Defendants.                       )

---

## COMPLAINT

---

COME NOW the Plaintiffs, by and through their attorney, and aver against the Defendants the following:

### INTRODUCTION

1.  This case arises out of the wrongful death of Hazel McGary, a deceased inmate of the Aliceville Federal Correctional Institution, and seeks relief under the United States Constitution, the Federal Tort Claims Act, and the laws of the State of Alabama.

### PARTIES

2.  Plaintiff Kinteshia Kimble is a resident citizen of Tangipahoa Parish, Louisiana,

and is over nineteen years of age.

3. Hazel McGary was, until her death on March 18, 2019, an inmate at the Aliceville Federal Correctional Institution.

4. Kinteshia Kimble is Hazel McGary's daughter, and was appointed Administrator of the Succession of Hazel McGary on August 7, 2020.

5. Defendants Hunter-Buskey, Ortiz, Knopp, Potter, and Williamson are, upon information and belief, individual members of the prison medical staff who personally committed the acts and omissions complained of herein.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §1331, as the Plaintiffs' claims arise under the Constitution and the laws of the United States. This Court has jurisdiction to grant relief in this action pursuant to 28 U.S.C. §1346(b), as the Plaintiffs' claims arise under the Federal Tort Claims Act.

7. Venue is proper as substantially all of the events or omissions giving rise to the Plaintiff's claims occurred within this district.

8. On November 16, 2020, the Plaintiffs timely filed an administrative complaint with the Bureau of Prisons.

## FACTUAL ALLEGATIONS

9. Hazel McGary was an inmate at the Aliceville Federal Correctional Facility, where she was serving a prison term of 87 months for three counts of white collar crimes relating to her tax preparation business.

10. At the time of her death, she had less than three years left to serve on her prison sentence.

11. During the winter of 2018, Hazel began experiencing numerous health problems, including shortness of breath, dizziness, headache, leg pain, tachycardia, weakness, and chest pain.

12. Her health declined in such a rapid fashion that by January of 2019, she needed a wheelchair to get around.

13. Though the rapidity of her decline was obvious to anyone who cared to look,

Hazel was never taken to a hospital for evaluation.

14. Nor was she provided access to the medicines she needed.

15. The medical care provided to her by the prison staff was haphazard at best, if not downright reckless and humiliating.  A few examples of her mistreatment include:

(a) On numerous occasions, she was effectively denied access to her medicines because she was physically unable to transport herself to the "pill line," despite the fact that she had requested permission to keep her lifesaving medicines in her cell;

(b) In February of 2019, Hazel tried to describe the severity of her chest pain to one "Mrs. Hunterbuskin,"[1] who replied that "there is no way you can have heart problems at your age unless you're a dope addict or have a severe infection."

(c) Though she exhibited obvious difficulty breathing and walking beginning in December of 2018 at the latest, she was not provided a wheelchair until February 16, 2019;

(d) On some occasions when she pressed the medical emergency button in her cell, the medical staff simply refused to see her;

(e) During a March 2019 "4 PM Call," Hazel rose from her wheelchair with difficulty.  One of the prison guards laughed at her, stating that it was "a miracle."

16. One of her persistent complaints was of leg pain in one side.

17. Pain in a single leg is a classic symptom of a blood clot.

18. Blood clots create a high risk of pulmonary embolism and stroke.

19. On at least one occasion, Hazel notified the prison staff that she believed she had suffered a minor stroke.

20. This complaint was ignored, and the medical staff didn't even include her complaints of stroke symptoms in their records.

21. Being confined to a wheelchair is an additional risk factor for the development of dangerous blood clots.

22. The Defendants never provided Hazel with any scan of her legs to determine

---

1    "Hunterbuskin" is, upon information and belief, Defendant Hunter-Buskey.

whether a clot was present.

23. The Defendants did not treat any potential blood clots, either by surgical intervention or medication.

24. Of most concern were her complaints of chest pain, which began to become severe several days before her death.

25. On March 14, 2019, she complained of headache and chest pain in the "left side" of her chest – a classic sign of a serious heart problem.

26. Rather than call an ambulance or even a doctor, the nurse-practitioner simply gave her some over-the-counter naproxen and sent her back to her cell.

27. Unsurprisingly, the naproxen did not solve her heart problems, so her chest pain continued.

28. On the morning of March 18, 2019, Hazel's chest pain was worse than ever.

29. She was so weak and dizzy that she passed out while sitting on the toilet shortly before 6:30 AM.

30. Again, no ambulance was called, and the prison did not let Hazel see a doctor.

31. Around noon, she suffered a cardiac arrest.

32. The ambulance did not arrive until 1:26 PM.

33. By that time, Hazel McGary was dead.

34. She was 49 years old.

35. The day before she died, she emailed her family, begging them to find help because "they alter results...to make it look like I am fine."

36. This was but the last of several emails to her family asking for the help that she desperately needed, but that the prison refused to provide.

37. The autopsy revealed that the immediate cause of Hazel's death was a pulmonary embolism.

38. Hazel's death could easily have been prevented had she been provided basic medical care.

39. At any point before her death, the prison officials could have sent her to an emergency room, called an ambulance, or had her examined by a cardiologist.

40. The symptoms she exhibited during the final months of her life—chest pain,

shortness of breath, dizziness, headache, high blood pressure—were all indicative of serious cardiopulmonary problems.

41. Hazel also exhibited numerous signs that she had a dangerous blood clot: she had very limited mobility, she had pain in one leg, she had dizziness and difficulty standing.

42. Furthermore, Hazel specifically warned the Defendants of these symptoms and begged that she be taken seriously.

43. The Defendants chose instead to ignore her.  As a result, she died.

44. The Defendants proximately caused Hazel to die prematurely by, *inter alia*:

(a) Failing to provide her with adequate access to medication;

(b) Failing to provide her with a wheelchair for nearly two months;

(c) Failing to refer her to a physician for her leg pain;

(d) Failing to refer her to a physician for her chest pain;

(e) Failing to treat the blood clot in her leg;

(f) Failing to test her for the presence of blood clots, despite her multiple and obvious risk factors and symptoms;

(g) Failing to transport her to a hospital when she was having chest pains during the days before her death;

(h) Failing to transport her to a hospital on the morning of March 18, 2019;

(i) Failing to prescribe medication to avoid stroke or embolism;

(j) Ignoring the severity of her symptoms.

45. The standard of care required that the Defendants treat Hazel's leg pain, chest pain, rapid health deterioration, immobility, and risk factors for blood clots, strokes, and embolisms.

46. The standard of care required that Defendants test Hazel for blood clots immediately when she complained of pain in one leg.

47. The standard of care required that Defendants send Hazel to a hospital when she notified them of her chest pain.

48. The Defendants violated the standard of care by ignoring Hazel's numerous health problems and symptoms.

49. A reasonably competent medical care provider would have made *some* effort to prevent Hazel from suffering a stroke or embolism.

50. Instead, the Defendants just gave her some OTC naproxen and sent her back to her cell to die.

51. Additionally, the Plaintiff, Hazel's daughter, has suffered extreme emotional distress, loss of companionship and loss of support, all of which naturally arise from the premature death of her mother.

### COUNT ONE: WRONGFUL DEATH

52. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 above.

53. As stated above, the Defendants proximately caused Hazel McGary to die by failing to provide her with adequate medical care, by failing to transport her to a hospital when she was exhibit obvious signs of an imminent cardiac event, and by failing to treat her blood clots.

54. The Defendants' reckless indifference to Hazel's medical needs was the proximate cause of her death.

55. Alternatively, the Defendants' negligent provision of medical care was the proximate cause of her death.

56. Pursuant to Alabama's wrongful death statute and the Federal Tort Claims Act, the Defendants are liable to the Plaintiff for the death of Hazel McGary.

57. Plaintiff seeks an award of compensatory and punitive damages for the wrongful death of Hazel McGary.

### COUNT TWO: 8th AMENDMENT

58. Plaintiff realleges and incorporates by reference paragraphs 1 through 50 above.

59. For the last few months of her life, Hazel McGary had serious medical needs, including but not limited to:

(a) severely limited mobility;

(b) accessing needed medications;

   (c) dangerous blood clots in her leg;

   (d) chest pain and other signs of dangerous heart problems;

   (e) risk of stroke and embolism.

60. Hazel's medical conditions placed her at imminent risk of stroke, heart attack, and pulmonary embolism.

61. The Defendants were at all times aware of Hazel's health conditions and the severity of the risks she faced.

62. Not only were Hazel's symptoms and risk factors obvious, but she specifically complained to the Defendants repeatedly in her efforts to get some sort of help.

63. But rather than providing Hazel with treatment for her numerous health problems, the Defendants were deliberately indifferent to them.

64. Had they cared to prevent her untimely death, they could have sent her to a hospital at any time in February or March of 2019.

65. Instead, they gave her some OTC medicine and sent her to her cell to die.

66. The Eight Amendment to the U.S. Constitution prohibits cruel and unusual punishments.

67. Among the things prohibited by the 8th Amendment are deliberate indifference to serious medical needs.

68. Hazel McGary was only sentenced to serve 87 months, not to be executed.

69. The Defendants, through the acts and omissions described above, effectively sentenced her to death.

70. By failing to provide her with basic and competent medical care, the Defendants violated her 8th Amendment right to be free from cruel and unusual punishment.

71. The Defendants are therefore liable to the Plaintiff for all damages arising from their violation of Hazel McGary's constitutional rights.


WHEREFORE, PREMISES CONSIDERED, Your Plaintiff respectfully prays this Honorable Court Issue an Order against the Defendant for the following:

   1. Actual damages and punitive damages for the wrongful death of Hazel McGary;
   2. Actual damages and punitive damages for violation of Hazel McGary's 8th

Amendment rights;

3. Costs incurred in prosecuting this action;

4. For such other, further, and general relief as Your Honor deems just and proper.


RESPECTFULLY SUBMITTED this Wednesday, May 26, 2021.

/s/ Judson E. Crump
Judson E. Crump [CRU021]
Attorney for Plaintiff

Judson E. Crump, PC
250 Congress Street
Mobile, AL 36603
251.272.9148
judson@judsonecrump.com